```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BORIS CAICEDO,

                        Plaintiff,
                                                    MEMORANDUM AND ORDER
        -against-                                   21-CV-2219 (OEM) (CLP)

HOME DEPOT U.S.A., INC,

                        Defendant.
----------------------------------------------------------------x
```

ORELIA E. MERCHANT, United States District Judge:

On April 22, 2021, Plaintiff Boris Caicedo ("Plaintiff") commenced this personal injury action against defendant Home Depot U.S.A., Inc. ("Defendant"), alleging that he slipped and fell in a Home Depot in Brooklyn, New York, on April 4, 2021, due to Defendant's negligence. *See generally* Complaint, Dkt. 1 (the "Complaint" or "Compl."). Before the Court is Defendant's fully briefed motion for summary judgment. *See generally* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, Dkt. 47-3 (the "Motion" or "Mot."); Plaintiff's Memorandum of Law in Opposition to the Motion by Defendant for Summary Judgment, Dkt. 48 (the "Opposition" or "Opp'n"); Defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment, Dkt. 49 (the "Reply").

For the following reasons, Defendant's Motion is granted.

## BACKGROUND[1]

### A. The Accident

Plaintiff alleges that he slipped and fell in a Home Depot located at 579 Gateway Drive, Brooklyn, New York, on April 4, 2021 (the "Accident"). *See* Plaintiff's Response to the Home

---

[1] The following facts are undisputed, unless otherwise indicated. The Court additionally notes that Plaintiff admitted to all facts asserted within Defendant's Rule 56.1 statement. *See* Plaintiff's Response to the Home Depot U.S.A.,

Depot U.S.A., Inc.'s Statement of Undisputed Material Facts and Counter Statement of Additional Material Facts Pursuant to Local Civil Rule 56.1 and Judge Merchant's Individual Rules ¶ 1, Dkt. 48-1 ("56.1 Opp'n"). That day, Plaintiff had gone to Home Depot to purchase fencing and related materials with two coworkers, David and Calvin. *Id.* ¶¶ 4-5.

When Plaintiff and his coworkers arrived at the store, Plaintiff "first went to the [lumber] aisle with his coworkers to see whether there was any fencing available. . . . When [P]laintiff saw that fencing was available, he" and his coworkers left the lumber aisle, found carts, and returned. *Id.* ¶¶ 8-11. As Plaintiff walked up to one of his coworkers, "he fell on his back." *Id.* ¶ 12. At that point, neither Plaintiff nor his coworkers had removed any fencing and each of them had been pushing a cart. *Id.* ¶¶ 13, 15. "Plaintiff did not know why he fell but once on the floor he smelled grease." *Id.* ¶ 16. Once Plaintiff stood up, his clothing "ended up with grease and his hands were slippery." *Id.* ¶ 17. Plaintiff then noticed "a puddle of approximately three feet on the floor," which "smelled like mechanic grease" to him. *Id.* ¶¶ 18-19. Plaintiff did not notice this puddle prior to falling. *Id.* ¶¶ 20-22.

Defendant has a "store opening checklist to check for unsafe issues," which a manager completes upon opening the store by walking the aisles and checking off each item on the checklist. *Id.* ¶¶ 28-29. "Home Depot associates thereafter continuously walk the store for safety issues throughout the day." *Id.* ¶ 30. When an associate comes "across a spill in an aisle, they . . . notify the manager on duty and the area [is] blockaded." *Id.* ¶ 31.

Carey Kelly ("Kelly"), one of Defendant's Assistant Store Managers at the store in question, testified that, on the day of the Accident, he had completed his morning checklist and did not note any spills or debris in the lumber aisle. *Id.* ¶ 32-36. Defendant did not sell any liquid

---

Inc.'s Statement of Undisputed Material Facts and Counter Statement of Additional Material Facts Pursuant to Local Civil Rule 56.1 and Judge Merchant's Individual Rules, Dkt. 48-1.

products in that aisle or in the adjacent aisles. *Id.* ¶¶ 37-38. Propane-powered forklifts are, however, "used to bring overstock merchandise" from the "back yard where overstock freight is kept." *Id.* ¶¶ 39-40.

Warren Britt ("Britt"), a lumber associate employed by Defendant, brought in a crate of fencing from outside with another associate, Louis Edmond ("Edmond"), using a forklift approximately five minutes before the Accident. *Id.* ¶ 64; Defendant's Reply to Plaintiff's Counterstatement of Additional Material Facts Pursuant to Local Rule 56.1 ¶¶ 7-8, Dkt. 49-1 ("56.1 Counterstatement Reply"). Britt acknowledged that there "could sometimes be water inside vinyl fencing that is stored outside, but associates would cut the crates open outside before bringing them in." 56.1 Opp'n ¶ 56. While Edmond testified that he had witnessed a forklift leak "maybe one time," he noted it was "rare[]" and had no knowledge of the Accident until he was informed of his deposition. 56.1 Counterstatement Reply ¶¶ 15, 18 (quoting Opp'n, Exhibit A at 34:3-4, Dkt. 48-3 ("Edmond Tr.")). Britt did not see any liquid on the ground when he and Edmond placed the crate in the aisle. 56.1 Opp'n ¶ 66.

According to Kelly, Britt notified him of the Accident between 10:30 a.m. and 11:30 a.m. *Id.* ¶ 42. Kelly then came to the aisle, spoke to Plaintiff, and contemporaneously wrote out a statement. *Id.* ¶¶ 42-44. Kelly documented that Plaintiff "stated while trying to pull out a vinyl panel he slipped and fell from water coming from the fencing." *Id.* ¶ 45. The "fencing was sitting flat on the floor of the aisle," and Kelly did not observe any liquid on the floor. *Id.* ¶¶ 46-47. Britt never told Kelly that he saw "a foreign substance on the floor," *id.* ¶ 48, and no customers reported water leaking from the fencing prior to Plaintiff's fall, *id.* ¶ 49. Beyond the store opening checklist and contemporaneous record of the Accident, Defendant ostensibly does not possess any additional written records of aisle inspections. *See* 56.1 Counterstatement Reply ¶¶ 13-14.

3

"At [P]laintiff's request, [Defendant] conducted a search for preventative maintenance and repair records" for forklifts "for the period of six months prior to and including the date of [the Accident]." 56.1 Opp'n ¶ 67. Defendant "did not identify any repair records indicating leaks of liquid" from forklifts. *Id.* Defendant's store readiness checklist for the date of the Accident and for one week prior similarly indicated that the lumber aisle was clear of spills and debris each morning. *Id.* ¶ 69. Defendant does not maintain any written records, such as a logbook, indicating who utilizes what forklift on any given day. 56.1 Counterstatement Reply ¶¶ 21-23.

### B. Procedural History

Plaintiff commenced this action on April 22, 2021, asserting jurisdiction under 28 U.S.C. § 1332 due to the parties' diverse citizenship and asserted damages in excess of $75,000. *See* Compl. ¶¶ 1-3, 8, 41. In his Complaint, Plaintiff alleges that he fell due to "a slippery, wet, greasy, and/or otherwise defective and hazardous condition . . . caused by reason of the negligence, carelessness and recklessness of . . . Defendant." *Id.* ¶¶ 30-31.

On August 17, 2021, Defendant answered, denying the substance of Plaintiff's allegations and asserting 27 affirmative defenses. *See generally* Home Depot U.S.A., Inc.'s Answer to Plaintiff's Complaint with Jury Demand, Dkt. 8.

On September 15, 2025, Defendant filed a premotion conference request regarding an anticipated motion for summary judgment. *See* Letter from Defendant to the Court (Sept. 15, 2025), Dkt. 45. The Court denied the request the following day, setting a briefing schedule instead.

Pursuant to that briefing schedule, Defendant served its moving papers by October 7, 2025; Plaintiff served his opposition by October 28, 2025; and Defendant served its reply and filed the fully briefed motion on November 7, 2025. *See* Mot.; Opp'n; Reply.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56 ("Rule 56"),[2] the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party first bears the burden of demonstrating that no genuine issue as to any material fact exists. *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir. 1994). The moving party must do so by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B). Alternatively, the moving party may meet their initial burden by demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential

---

[2] The Court retains subject-matter jurisdiction over this matter due to diversity of the parties' citizenship and asserted damages in excess of $75,000. *See* Mot. at 5; Compl. ¶¶ 1-3, 8, 41. It is well settled that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). New York substantive law and federal procedural law therefore govern this dispute. *See Kirbaran v. Target Corp.*, 24-715, 2025 WL 973050, at *2 (2d Cir. Apr. 1, 2025).

Nevertheless, Plaintiff advocates for the application of New York's summary judgment standard. *See generally* Opp'n. As the Second Circuit affirmed earlier this year, the Rule 56 summary judgment standard, rather than the New York summary judgment standard, applies to slip-and-fall cases brought under federal diversity jurisdiction. *See Kirbaran*, 2025 WL 973050, at *2 (holding that "the issue of burden of proof at summary judgment is procedural in nature, and is thus governed by Federal law" (quoting *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 275 (S.D.N.Y. 2024), *aff'd*, *Kirbaran*, 2025 WL 973050)). This distinction is significant because a defendant moving for summary judgment under federal procedural law can succeed by pointing to a plaintiff's failure to establish an essential element of their case, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), whereas a defendant moving for summary judgment under New York procedural law carries the initial burden of making a prima facie showing, *Kirbaran*, 2025 WL 973050, at *1 (citing *Levine v. Amverserve Ass'n*, 938 N.Y.S.2d 593, 594 (2d Dep't 2012)); *see also Ellison v. Stop & Shop Supermkt. Co.*, 21-CV-22 (AMD) (LB), 2022 WL 4238266, at *4 (E.D.N.Y. Sept. 14, 2022). The Court thus declines to apply the New York summary judgment standard. Defendant is not, contrary to Plaintiff's assertions, required to make a prima facie showing in its Motion.

element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). It may not "merely . . . assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *SEC v. Rsch. Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)).

At this stage in the litigation, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). The "[C]ourt's task . . . is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224. In doing so, the Court must consider "only admissible evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[I]t is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment.").

## DISCUSSION

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and

6

(3) injury to the plaintiff as a result thereof.'" *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (quoting *Akins v. Glen Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981)).

In its Motion, Defendant argues that Plaintiff has failed to adduce evidence of the essential element of breach. *See* Mot. at 5-14. In New York, "[a]n owner of property has a duty to maintain his or her premises in a reasonably safe condition." *Walsh v. Super Value, Inc.*, 904 N.Y.S.2d 121, 125 (2d Dep't 2010); *see also Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976). To establish breach of that duty, "a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness." *Borley*, 22 F.4th at 79 (citing *Walsh*, 904 N.Y.S.2d at 125). The Court analyzes each of these requirements by turns.

**A. Plaintiff Fails to Raise a Triable Issue of Fact as to Whether Defendant Created the Alleged Dangerous Condition.**

To establish creation of a dangerous condition, Plaintiff must offer evidence of "some affirmative act" by Defendant that was "both 'deliberate and intentional.'" *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 274 (S.D.N.Y. 2024) (first quoting *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004); then quoting *Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483, 493 (S.D.N.Y. 2014), *aff'd*, 603 F. App'x 10 (2d Cir. 2015)), *aff'd*, 24-715, 2025 WL 973050, (2d Cir. Apr. 1, 2025). Evidence of an absence of action, such as evidence of a failure to clean, evidence of a failure to implement a policy, or evidence that Defendant "merely permitted a dangerous condition to exist," is insufficient. *Kirbaran*, 720 F. Supp. 3d at 276 (quoting *Stepton-Howard v. Rite Aid Corp.*, 16-cv-1352 (SJF) (AYS), 2017 WL 3017191, at *3 (E.D.N.Y. June 13, 2017)); *see also Cook v. Rezende*, 300 N.E.2d 428, 429 (N.Y. 1973) ("Neither his duty nor his potential liability is to be predicated upon his 'permitting' a dangerous condition to exist, but rather is based upon his own affirmative act in creating the condition complained of."). Where a plaintiff can establish that the defendant created a condition, however, the "'usual

7

questions of notice of the condition are irrelevant' . . . because an owner who creates a dangerous or defective condition usually knows about it." *Walsh*, 904 N.Y.S.2d at 125 (quoting *Cook*, 300 N.E.2d at 429).

Defendant argues that Plaintiff "has failed to adduce any evidence that any Home Depot employee caused the liquid to be on the floor, let alone that this was an affirmative, 'deliberate and intentional' act on the part of Home Depot." Mot. at 6 (quoting *Kirbaran*, 720 F. Supp. 3d at 274). Further, Defendant argues that there is "no evidence in the record of any leaking lift truck reported on the date of [the Accident] or at any time prior." *Id.* at 7.

In opposition, Plaintiff asserts that Defendant "caused and created the condition complained of through defective hi-lo machines that were utilized throughout the store." Opp'n at 1; *see id.* at 4. Plaintiff relies on deposition testimony from Edmond, Kelly, and Britt, *see id.* at 1-5, that he argues demonstrates Defendant's failure to implement a "regular inspection procedure other than a random approach of seeing something while in an aisle" and Defendant's morning walkthrough, *id.* at 4. Plaintiff further highlights that Defendant lacks any written records of spills beyond Defendant's store readiness checklist, which only captured spills found before Defendant opened every morning. *Id.* at 5; *see* 56.1 Counterstatement Reply ¶¶ 13-14.

While this Court determines that all three employees' testimony is admissible under Federal Rule of Evidence 701 ("Rule 701") for the purposes of summary judgment,[3] such evidence does not raise a triable issue of fact as to creation. Even interpreted in the light most favorable to Plaintiff, this evidence would not permit a reasonable factfinder to determine that Defendant

---

[3] Rule 701 provides that a lay witness's testimony is admissible if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." All three witnesses spoke about their own personal experiences working for Defendant generally and on the day of the Accident specifically. *See generally* Edmond Tr.; Opp'n, Exhibit B, Dkt. 48-4; Opp'n, Exhibit C, Dkt. 48-5. They did not base their testimony on scientific, technical, or other specialized knowledge and are not offered by Plaintiff or by Defendant, who both refer to their testimony, as experts. The Court determines that their testimony is helpful.

8

affirmatively created the allegedly dangerous condition under New York law. *See Cook*, 300 N.E.2d at 429; *Kirbaran*, 720 F. Supp. 3d at 274.

**B. Plaintiff Fails to Raise a Triable Issue of Fact as to Whether Defendant Had Actual Notice of the Alleged Dangerous Condition.**

Plaintiff's actual notice claim fares no better. "Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition." *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (citing *Matcovsky v. Days Hotel*, 782 N.Y.S.2d 64, 65 (1st Dep't 2004)).

Defendant argues that Plaintiff cannot raise a triable issue of fact as to actual notice because "[t]here is no suggestion that any Home Depot employees actually observed the liquid on the floor prior to the [Accident]. Nor is there evidence that anyone reported or complained to Home Depot about the liquid being on the floor." Mot. at 9; *see also* Reply at 3. Defendant further asserts that "Plaintiff himself testified he did not observe the puddle, which he estimated to be roughly 3' in diameter, on his earlier visit to the aisle or when he returned immediately prior to his [A]ccident." Mot. at 9; *see also* Reply at 3.[4]

In opposition, Plaintiff again relies on Edmond's, Kelly's, and Britt's testimony, *see* Opp'n at 1-5, to argue that a triable issue of fact exists on actual notice due to Defendant's failure to implement a "regular inspection procedure other than a random approach of seeing something while in an aisle," and the morning walkthrough, *id.* at 4. Plaintiff reiterates that Defendant lacked any written records of forklift usage in the lumber aisle or of aisle inspections beyond Defendant's store readiness checklist. *Id.* at 5. Plaintiff additionally argues that Britt's testimony shows that

---

[4] As with Edmond's, Britt's, and Carey's testimony, the Court determines that, for the purposes of summary judgment, Plaintiff's deposition testimony, which was submitted by both parties, is admissible under Rule 701. *See* Mot., Exhibit C, Dkt. 47-6; Opp'n, Exhibit D, Dkt. 48-6. Plaintiff spoke to matters within his personal knowledge and is not offered as an expert by either party. The Court determines that this testimony is helpful.

9

"machinery was in the aisle five minutes prior to the [A]ccident" and that the deposition testimony is otherwise "completely contradictory" such that the Court should deny summary judgment. *Id.* at 18.

Plaintiff fails to raise a triable issue of fact on actual notice. Plaintiff does not submit any evidence indicating that Defendant received any complaints or was similarly alerted to the existence of the alleged dangerous condition. Instead, Plaintiff relies on the absence of evidence to assert that Defendant "cannot claim a lack of notice." *Id.* at 5; *see id.* at 17. But, as explained above, Defendant's burden on summary judgment under Rule 56 is not to make a prima facie showing, as required under New York law; rather, it is permissible for Defendant, under *Celotex*, to point to the absence of evidence on an essential element of Plaintiff's case. It is Plaintiff's burden to come forward with "specific facts showing that there is a genuine issue for trial," which he has failed to do. *Matsushita*, 475 U.S. at 586-87 (citation omitted). Even viewing Plaintiff's evidence in the light most favorable to him, the Court cannot conclude that a reasonable factfinder would determine that Defendant had actual notice of the alleged dangerous condition.

### C. Plaintiff Fails to Raise a Triable Issue of Fact as to Whether Defendant Had Constructive Notice of the Alleged Dangerous Condition.

Plaintiff's constructive notice claim is similarly unavailing. In negligence cases involving slippery floors, "New York courts have hesitated to find constructive notice." *Borley*, 22 F.4th at 81 (collecting cases). But where they do, the plaintiff has established that the alleged dangerous condition is "visible and apparent, and has existed for a length of time sufficient to afford a reasonable opportunity to discover and remedy it." *Walsh*, 904 N.Y.S.2d at 125; *see also Urrutia v. Target Corp.*, 681 F. App'x 102, 104 (2d Cir. 2017) (quoting *Hartley v. Waldbaum, Inc.*, 893 N.Y.S.2d 272, 273 (2d Dep't 2010)). "In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that

10

the defendant had notice of the 'particular condition' at issue." *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (quoting *Gordon v. Am. Museum of Nat. Hist.*, 492 N.E.2d 774, 775 (N.Y. 1986)); *see also Piacquadio v. Recine Realty Corp.*, 646 N.E.2d 795, 796 (N.Y. 1994) ("[A] 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall.").

Alternatively, a plaintiff may establish constructive notice in two other ways: either (1) by showing that there was "a recurring dangerous condition in the area of the accident was routinely left unaddressed by the defendant," *Borley*, 22 F.4th at 79 (quoting *Mullin v. 100 Church LLC*, 784 N.Y.S.2d 545, 546 (1st Dep't 2004)); *see also Weisenthal v. Pickman*, 545 N.Y.S.2d 369, 371 (2d Dep't 1989), or (2) by alleging that Defendant failed to inspect its premises. To prevail on the former theory, knowledge of "each specific reoccurrence" is not required, *Weisenthal*, 545 N.Y.S.2d at 371, but a "general awareness of a recurring problem is insufficient, without more, to establish constructive notice of the particular condition causing the fall," *Schubert-Fanning v. Stop & Shop Supermkt. Co.*, 988 N.Y.S.2d 245, 247 (2d Dep't 2014). To succeed on the latter theory, "a plaintiff 'must still come forward with evidence showing that a reasonable inspection would have revealed the condition.'" *Kirbaran*, 720 F. Supp. 3d at 278 (quoting *Wilson v. Wal-Mart Stores E., LP*, 16 Civ. 8637 (JCM), 2018 WL 4473342, at *8 (S.D.N.Y. Sept. 18, 2018)).

Defendant argues that Plaintiff "has failed to adduce any evidence that the item on the floor was visible and apparent." Mot. at 11. Defendant notes that "[P]laintiff testified he never observed the puddle before he fell" and that "[t]here was nothing blocking [P]laintiff's view of the floor as he walked into [the lumber aisle] on both occasions prior to his [A]ccident." *Id.* Additionally, Defendant argues that Plaintiff "has failed to adduce any evidence whatsoever that the liquid existed on the floor for such a length of time that . . . [D]efendant should have both discovered and

11

remedied it prior to [P]laintiff's [A]ccident. The evidence, or lack thereof," Defendant contends, "is equally consistent with a finding that the liquid condition was present for less than a minute before the [A]ccident as it is with a finding that the liquid was present on the floor for such a length of time that [D]efendant should have rectified it." *Id.* at 12.

In opposition, Plaintiff argues that "the absence of a reasonable inspection procedure renders constructive notice irrelevant." Opp'n at 5-6. As with the issues of creation and actual notice, Plaintiff emphasizes Defendant's lack of a "regular inspection procedure other than a random approach of seeing something while in an aisle," and the morning walkthrough. *Id.* at 4; *see id.* at 5-10. Plaintiff asserts that Defendant lacked any additional "written reports, logs, or any documentary evidence," *id.* at 4, and that Defendant should have utilized its security cameras to monitor the aisle at issue, *id.* at 10.

In reply, Defendant contends that a failure-to-inspect theory still requires Plaintiff to raise a triable issue of fact as to how long the alleged dangerous condition existed such that a reasonable inspection could have revealed the condition to Defendant. Reply at 3-7. Defendant asserts that Plaintiff has failed to do so.

First, Plaintiff has failed to put forward any evidence suggesting that the alleged dangerous condition was visible and apparent. Indeed, neither Plaintiff nor any of Defendant's employees saw the alleged puddle before Plaintiff fell. *See* 56.1 Opp'n ¶¶ 16, 18, 20-21, 36, 47-48, 53, 66. Viewing this evidence in the light most favorable to Plaintiff, the Court finds that no reasonable factfinder could determine that the alleged condition was visible and apparent. *Contrast, e.g.*, *Robinson v. Wal-Mart Stores, Inc.*, 99-7436, 2000 WL 1811070, at *2 (2d Cir. Dec. 11, 2000) (affirming summary judgment where neither the plaintiff nor the defendant saw the alleged dangerous condition before the plaintiff fell)*, and Tenay v. Culinary Tchrs. Ass'n*, 281 F. App'x

12

11, 14 (2d Cir. 2008) (affirming summary judgment where the plaintiff failed to put forward "any evidence that the [alleged] wet area was visible or apparent"), *with Urrutia*, 681 F. App'x at 104 (reversing summary judgment where the plaintiff had noticed the alleged puddle upon entering the store about 45 minutes before she fell).

Second, Plaintiff fails to adduce any evidence of how long the alleged dangerous condition was on the floor of the lumber aisle. Instead, Plaintiff speculates that the alleged puddle may have originated from a forklift, which Britt testified had been in the lumber aisle approximately five minutes before the Accident. 56.1 Counterstatement Reply ¶ 8. Viewing the evidence in the light most favorable to Plaintiff, this attenuated assertion does not raise a triable issue of fact. *See, e.g.*, *Kershner v. Pathmark Stores, Inc.*, 720 N.Y.S.2d 552, 584 (2d Dep't 2001) ("In the absence of proof as to how long a puddle of water was on the floor of the entrance to its store, there is no evidence to permit an inference that the defendant . . . had constructive notice of the condition."); *Ortiz v. Pathmark Stores, Inc.*, 04-6146-CV, 2005 WL 2899864, at *2 (2d Cir. Nov. 3 2005) (affirming the district court's grant of summary judgment where the plaintiff failed to adduce any evidence as to how long the grapes she slipped on in the defendant supermarket had been on the floor); *Tenay*, 281 F. App'x at 14 (affirming summary judgment where the plaintiff failed to put forward "any evidence suggesting how long the condition had existed prior to his fall").

Third, Plaintiff does not offer any evidence that the alleged dangerous condition was a recurring problem. Rather, Plaintiff assumes the legal conclusion that it was. *See* Opp'n at 17 (referring to the "recurrent condition" without establishing that the alleged dangerous condition was, in fact, recurrent). As stated above, however, the "mere[] . . . assert[ion of] a conclusion without supplying supporting arguments or facts" does not raise a triable issue of fact. *BellSouth Telecomms., Inc.*, 77 F.3d at 615 (quoting *Rsch. Automation Corp.*, 585 F.2d at 33). The Court

13

holds that no reasonable factfinder could conclude that the alleged dangerous condition was recurring. *Contrast Riley v. Battery Place Car Park*, 210 F. App'x 76, 77 (2d Cir. 2006) (finding no triable issue of fact on constructive notice where the plaintiff failed to offer any evidence that the alleged oil patch in the defendants' parking lot was a reoccurring condition)*, and Ellison v. Stop & Shop Supermkt. Co.*, 21-CV-22 (AMD) (LB), 2022 WL 4238266, at *7 (E.D.N.Y. Sept. 14, 2022) (declining to find a triable issue of fact on the issue of recurrence where Plaintiff adduced no evidence of recurring leaks at the defendant supermarket)*, with Graham v. N.Y.C. Hous. Auth.*, 216 N.Y.S.3d 6, 9 (2d Dep't 2024) (finding sufficient evidence of a recurring condition where the defendant's employee testified that she was aware that the subject apartment building had a recurring leak due to rainfall).

Instead, Plaintiff's constructive notice argument hinges upon Defendant's alleged failure to inspect. Within Defendant's common law duty to maintain a premises in a reasonably safe condition is an obligation to use reasonable care to inspect and repair common areas. *See Lacey v. Target Corp.*, 13 CV 4098(RML), 2015 WL 2254968, at *5 (E.D.N.Y. May 13, 2015); *Torres v. United States*, 09 Civ. 5092(RLE), 2010 WL 5422547, at *3 (S.D.N.Y. Dec. 23, 2010) ("Under New York common law, landlords or owners of a property, commercial or residential, have an obligation to maintain the common areas in a reasonably safe condition and have a duty to use reasonable care to inspect and repair common areas."). Plaintiff is correct to note that some courts have held that the failure to inspect displaces the need for notice. *See* Opp'n at 5-6 (citing, for example, *Tuthill v. United States*, 270 F. Supp. 2d 395 (S.D.N.Y. 2003)). But others have held that a failure to inspect may be "a means for establishing constructive notice." *Cooper v. Wal-Mart Stores, Inc.*, 24 Civ. 205 (JCM), 2025 WL 1617071, at *8 (S.D.N.Y. June 6, 2025) (quoting *Wilson*, 2018 WL 4473342, at *8); *see also Kirbaran*, 720 F. Supp. 3d at 278. Under either

14

approach, however, "a plaintiff 'must still come forward with evidence showing that a reasonable inspection would have revealed the condition.'" *Kirbaran*, 720 F. Supp. 3d at 278 (quoting *Wilson*, 2018 WL 4473342, at *8). In other words, evidence of duration is still required. *Lacey*, 2015 WL 2254968, at *6 ("Regardless, even assuming a reasonable inspection had not taken place, plaintiff has not shown that a reasonable inspection would have discovered the condition, as she cannot establish the length of time that the condition was there to be discovered."). Because Plaintiff has failed to come forward with any such evidence, the Court holds that no genuine issue of material fact exists as to the alleged failure to inspect.

Plaintiff's cited cases do not compel a different result. In large part, Plaintiff relies on *Cruz v. Target Corp.*, 14-CV-2728 (RER), 2016 WL 3102018 (E.D.N.Y. June 2, 2016), which he argues should control this Court's decision. *See* Opp'n at 1 ("Plaintiff submits that Cruz is directly on point and alone warrants denial of this motion."). In *Cruz*, Judge Reyes denied a motion for summary judgment where "it [was] far from clear that Defendant's periodic inspections of its premises were reasonably designed to uncover spills." 2016 WL 3102018, at *2. Judge Reyes declined to adopt the argument "that summary judgment must be granted even if it did not conduct a reasonable inspection because Plaintiff still cannot establish for how long the spill had been present before her accident." *Id.*

As Defendant has pointed out, however, *see* Reply at 3, *Cruz* represents a minority view no longer dominant in this District, *see, e.g.*, *Young v. Morrison Mgmt. Specialists, Inc.*, 14-cv-4261 (RER), 2017 WL 435783, at *4 (E.D.N.Y. Feb. 1, 2017) (Notwithstanding his earlier decision in *Cruz*, Judge Reyes's subsequent decision in *Young* acknowledged that a plaintiff must still demonstrate "that a reasonable inspection would have prevented the injury" and that, to do so, "some evidence of timing is still required."); *Bogery v. United States*, 17-CV-6996 (VEC), 2018

15

WL 4265901, at *8 n.9 (S.D.N.Y. Sept. 6, 2018) (characterizing *Cruz* as a "minority" view); *see also Boccio v. Costco Wholesale Corp.*, 18-cv-4317 (ST), 2023 WL 2477683, at *5 (E.D.N.Y. Mar. 13, 2023) ("The current state of the law in New York is clear that a failure to inspect theory still requires that a plaintiff show that the alleged defect existed for a sufficient period of time that a reasonable inspection could have revealed the defect to the property owner."). *Cruz* therefore does not "warrant[] denial," as Plaintiff contends, Opp'n at 1, and, to the extent that it is offered as persuasive authority, cases since *Cruz* have prevailed. The Second Circuit supports this approach. *See, e.g.*, *Kirbaran*, 720 F. Supp. 3d at 278; *Kirbaran*, 2025 WL 973050, at *2.

Plaintiff's reliance on *Tuthill*, 270 F. Supp. 2d at 400-01; *Cuello v. Target Corp.*, 22 Civ. 2013 (PAE), 2023 WL 4763234, at *8-9 (S.D.N.Y. July 26, 2023); *Bryndle v. Boulevard Towers, II, LLC*, 132 F. Supp. 3d 486, 499-502 (W.D.N.Y. 2017); and *Hall v. United States*, 8:18-CV-0049 (NAM/CFH), 2020 WL 759045, at *7-8 (N.D.N.Y. Feb. 14, 2020), *see* Opp'n at 5-7, are thus properly understood within this doctrinal context and are distinguishable on that basis. Further, as Defendant asserts, *see* Reply at 3 n.1, *Tuthill* differs for the additional reason that, there, the plaintiff had successfully raised a triable issue of fact as to the recurring nature of the alleged icy condition, *see Tuthill*, 270 F. Supp. 2d at 400, which, here, Plaintiff has failed to do. Moreover, *Yahya v. United States*, 1:21-cv-375-CCR, 2024 WL 4894791, at *6-7 (W.D.N.Y. Nov. 25, 2024), is distinguishable on the grounds that, there, the plaintiff testified that he had seen the snow and ice he slipped on before he fell and submitted evidence as to the length of time that the snow and ice had been present on the ground. As discussed above, however, Plaintiff has submitted no such evidence. Instead, Plaintiff relies solely on speculative assertions inferred from four deposition transcripts. *See generally* Opp'n; 56.1 Opp'n; Certification of Plaintiff's Counsel in Support of Rule 56.1 Statement, Dkt. 48-2.

16

### D. The Court Declines to Find that Defendant Spoliated Evidence.

Lastly, Plaintiff cross-moves for discovery sanctions against Defendant on the basis that Defendant allegedly spoliated evidence that may have demonstrated the creation or notice of the condition at issue. *See* Opp'n at 10-15. Plaintiff's sole support for his cross-motion is Defendant's Exhibit F, in which Defendant responded to three document requests from Plaintiff. *See generally* Mot., Exhibit F, Dkt. 47-9 ("Def.'s Ex. F"). In pertinent part, Plaintiff sought "[a]ny and all repair/maintenance records from the 'forklift', as identified in page 38 of the transcript of Carey Kelly's deposition, from the date of the accident and the six (6) months prior." *Id.* at 4. Defendant responded by providing a list of preventative maintenance and repair order requests for the six-month period prior to the Accident. *Id.* at 4-5. In doing so, Defendant simultaneously noted that it was "unable to produce the actual work orders for these preventative maintenance and repair work order requests due to its migration of all prior work requests to a new database system in April 2023, where attachments were not migrated." *Id.* at 4. Plaintiff interprets this response to be an admission that Defendant "destroyed the actual tickets and records from the maintenance." Opp'n at 11. Citing Federal Rule of Civil Procedure 37(c)(1) ("Rule 37(c)(1)"),[5] Plaintiff adds that these discovery responses were produced late in the discovery process, on September 2, 2025, such that the alleged spoliation of records "was not harmless or substantially justified." *Id.* at 15; *see id.* at 12.

In its Reply, Defendant clarifies that its discovery response "was believed to be accurate at the time the response was served; however [Defendant] later learned that this information was not

---

[5] Plaintiff additionally advocates for the application of New York spoliation law. *See* Opp'n at 13-15. However, for similar reasons to those stated above with respect to this Court's application of Rule 56, as opposed to the New York summary judgment standard, *see supra* note 2, the Court applies the Federal Rules of Civil Procedure when assessing Plaintiff's discovery sanctions argument, as opposed to New York law, *see, e.g.*, *Schwarz v. FedEx Kinko's Office*, 08 Civ. 6486(THK), 2009 WL 3459217, at *6 n.4 (S.D.N.Y. Oct. 27, 2009) ("In a diversity case, federal law, not state law, governs the Court's imposition of spoliation sanctions.").

17

completely accurate." Reply at 9. Defendant submits a copy of an expert disclosure by John Hannah, Defendant's "Senior Manager – Equipment, Building Services," Reply, Exhibit J at 1, Dkt. 49-2 (the "Hannah Disclosure"), and an excel spreadsheet containing the "complete universe of information for each of those repair work orders," which were provided to Plaintiff on October 10, 2025, *id.* at 3.[6] That report further explains that

> the only items which were temporarily inaccessible were potential attachments to work orders, which would include photographs and invoices, which are submitted by Home Depot's vendors. Those attachments are now able to be retrieved. Review of the four repair work orders identified [in the six-month period] has determined no attachments were ever submitted by the vendor for those repair work orders.

*Id.* at 3. Defendant thus asserts that "there was no spoliation of records; the records which [P]laintiff claims were somehow spoliated never existed as attachments for the relevant work orders identified by Home Depot." Reply at 9.

For the reasons stated in Defendant's Reply, the Court finds that there is no spoliation of records. However, even assuming *arguendo*, that there is a spoliation issue, preclusion is not warranted. Rule 37(c)(1) prohibits a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e)" from "us[ing] that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." When considering whether to preclude evidence, courts assess: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to

---

[6] Under Federal Rule of Evidence 702 ("Rule 702"), an expert witness may testify if the proponent demonstrates to the court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Here, for purposes of summary judgment, the Court determines that Hannah's expert opinion meets the requirements of Rule 702 and notes that Plaintiff does not object to the admissibility of his report. *See* Opp'n at 10-15.

18

prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alteration in original) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)). "Preclusion of evidence is a 'harsh remedy that should only be imposed in rare situations.'" *Clones Inv., LLC v. People's Ins. Co. of China & Cas. Co.*, 15 Civ. 8649 (AT), 2019 WL 10817175, at *1 (S.D.N.Y. Jan. 31, 2019) (quoting *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 324 (S.D.N.Y. 2013)), *aff'd*, 792 F. App'x 126 (2d Cir. 2020). Contrary to Plaintiff's assertion that Rule 36(c)(1) is "automatic," Opp'n at 15, the Second Circuit "has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Pal v. N.Y. Univ.*, 06 Civ. 5892(PAC)(FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)).

Plaintiff deposed Kelly for approximately an hour and forty-five minutes on July 3, 2024. *See generally* Opp'n, Exhibit B, Dkt. 48-4 ("Kelly Tr."). Plaintiff subsequently sent three document requests to Defendant on August 27, 2024, which Defendant responded to approximately one year later, on September 2, 2025. *See* Def.'s Ex. F at 1, 6. Fact discovery closed on September 1, 2025, one day before Defendant responded. Defendant then supplemented its response by submitting the Hannah Disclosure and spreadsheet on October 10, 2025, three days before expert discovery closed on October 13, 2025. Hannah Disclosure at 1.

The first *Patterson* factor weighs in favor of preclusion. Defendant does not explain why its response to Plaintiff's document requests was served about one year after the requests were initially propounded and one day after the close of fact discovery. *See* Reply at 8-10. Nor does Defendant explain why this information was later learned to be "not completely accurate." *Id.* at 9.

19

Nevertheless, the remaining *Patterson* factors weigh against preclusion. This record information is important: it speaks directly to Plaintiff's alleged dangerous condition and whether Defendant either created or had notice of it. Any prejudice to Plaintiff was similarly minimal. While Defendant's tardiness in producing this information meant that Plaintiff did not have an opportunity to question Kelly about these records before fact discovery closed, Plaintiff did have an opportunity to question Kelly about his recollection of a forklift propane leak and Defendant's recordkeeping regarding leaks. *See* Kelly Tr. at 38:20-45:9. Plaintiff was therefore on notice that Defendant was arguing that there was no leak at issue. *Cf. Clones*, 2019 WL 10817175, at *3. Plaintiff likewise was, ultimately, supplied with the records he claims Defendant failed to produce on October 10, 2025, three days before the close of expert discovery. Trial is not scheduled to begin in this matter until March 9, 2026. *Contrast, e.g.*, *Chamberlain ex rel. Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 117-18 (2d Cir. 2020) (observing that the request to preclude "came one week before trial and after discovery had been concluded" and finding that a "continuance would further protract the case at a point when all parties were otherwise prepared to proceed to trial"). Plaintiff thus had ample time to seek to reopen discovery to question Kelly on these records, if he desired to do so. But he did not. Although Defendant's failure to explain its delay weighs in favor of preclusion of the records, the remaining Rule 37(c)(1) factors caution against the "harsh remedy."

## CONCLUSION

For the foregoing reason, the Court grants Defendant's Motion.

SO ORDERED.

                                                   /s/
                                            ORELIA E. MERCHANT
                                            United States District Judge

January 5, 2026
Brooklyn, New York